**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| REGIONS BANK d/b/a/ ASCENTIUM CAPITAL,<br><br>Plaintiff,<br><br>v.<br><br>PHOENIX MARKETING & ADVERTISING, INC.,<br><br>and<br><br>ROBERT RIOS<br><br>Defendants. | Case No.: |

# COMPLAINT

Plaintiff Regions Bank, an Alabama banking corporation, d/b/a Ascentium Capital ("Ascentium"), by and through its undersigned counsel, and for its Complaint against Defendants Phoenix Marketing & Advertising Inc. ("Phoenix") and Robert Rios ("Rios"), states as follows:

## PARTIES

1. Plaintiff Regions Bank ("Ascentium" or "Plaintiff") is an Alabama banking corporation with its usual place of business at 23970 Highway 59 N, Kingwood, Texas 77339, doing business as Ascentium Capital.

2. Upon information and belief, Defendant Phoenix Marketing & Advertising Inc. ("Phoenix") is a Massachusetts corporation with its usual place of business at 64 Dewey Street, Worcester, Massachusetts 01610.

3. Upon information and belief, Defendant Robert Rios ("Rios," and together with Phoenix, "Defendants") is an individual who, at all times relevant to this action, has been the President of Phoenix and may be served at 64 Dewey Street, Worcester, Massachusetts 01610.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff, a citizen of Alabama, and Defendants, both of whom are citizens of Massachusetts, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendants because Phoenix maintains its principal place of business in Worcester, Massachusetts, and Rios resides in Massachusetts. The claims arise from Defendants' conduct and obligations undertaken in Massachusetts, including the execution and performance of the Equipment Finance Agreements ("EFAs") and related guaranties at issue in this action, and Phoenix's continued possession of collateral located in Massachusetts.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to the claims occurred in this District, including the location of the collateral described herein.

7. The Parties agreed in each of the EFAs and Guaranties that any disputes would be governed by the law of the State of Alabama, excluding conflicts-of-law principles. Because that consent is non-exclusive, it does not preclude Ascentium from bringing this action in this District, where Defendants reside and the collateral is located. Ascentium accordingly invokes Alabama substantive law to govern the construction and enforcement of the EFAs and the Guaranties in accordance with their express terms, while pursuing its claim for return of the EFA 126 collateral

under the replevin procedure available under Massachusetts law for goods situated in this Commonwealth.

8. The Parties further agreed to waive their rights to a trial by jury in any dispute arising out of the relevant contracts to this case.

## STATEMENT OF FACTS

### A. EFA No. 2747126

9. On September 14, 2023, Ascentium and Phoenix entered into Equipment Finance Agreement ("EFA") No. 2747126 ("EFA 126") for the financing of a 2024 Mercedes Sprinter Day Cruiser, VIN W1X8ND3Y6PP574472 (the "126 Collateral"), with a financed amount of $181,463.94 at an interest rate of 8.59% per annum. A true and accurate copy of EFA 126 is attached hereto as **Exhibit A.**

10. The payment schedule under EFA 126 required one first payment of $18,146.39, followed by 71 monthly payments of $2,942.17.

11. Pursuant to Section 3 of EFA 126, Phoenix granted Ascentium a security interest under the Uniform Commercial Code ("UCC") in the 126 Collateral and all accessories, additions, replacements, and proceeds thereof, to secure all obligations under EFA 126.

12. Phoenix agreed in EFA 126, to maintain the 126 Collateral at a specified location, keep it in good working order, obtain Ascentium's consent before relocating it, and keep it insured naming Ascentium as loss payee.

13. Section 9 of EFA 126 provides that Phoenix shall be in default if it fails to pay any payment or other amount due when owed; and that upon default Ascentium may, at its election, accelerate and require payment of the "Accelerated Balance," consisting of all accrued and unpaid amounts then due plus the remaining future payments discounted to present value at 3% per annum,

in addition to pursuing any other remedy available under the UCC or applicable law, including repossession of the 126 Collateral.

14. On September 11, 2023, Rios executed a Personal Guaranty in favor of Ascentium (the "126 Guaranty"), unconditionally guaranteeing all obligations of Phoenix under EFA 126. A true and accurate copy of the 126 Guaranty is attached hereto as **Exhibit B**.

15. The 126 Guaranty provides that, in the event that Phoenix defaults under EFA 126, Ascentium may proceed first against Rios before proceeding against Phoenix, any collateral, or before enforcing any other remedy. Further, the 126 Guaranty provides that Rios waived all presentments, demands for performance, notices of protest, notices of dishonor, and notices of acceptance of the same.

16. A Titling Addendum executed by Phoenix dated September 11, 2023 required Phoenix to deliver the Original Certificate of Title for the 126 Collateral to Ascentium within 90 days, listing Phoenix as owner and Regions Bank as lienholder. A true and accurate copy of the Titling Addendum, and sale invoice for the 126 Collateral are attached hereto as **Exhibit C**.

17. A Massachusetts Certificate of Title issued on December 21, 2023 lists Phoenix as owner and Regions Bank as first lienholder for the 126 Collateral. A true and accurate copy of the 126 Certificate of Title is attached hereto as **Exhibit D**.

18. By signature of Rios dated September 11, 2023, Phoenix confirmed in a Delivery and Acceptance Certificate that it had taken full possession of the 126 Collateral, which document also directed Ascentium to make the payment for the 126 Collateral to the equipment sellers, Ultimate Toys. A true and accurate copy of the Delivery and Acceptance Certificate is attached hereto as **Exhibit E**.

19. Phoenix generally made its payments due under EFA 126 between September 2023 and early 2026. A true and accurate copy of the Life to Date – Charge of Ledger (the "126 Ledger") is attached hereto as **Exhibit F**.

20. Phoenix defaulted under EFA 126 by, among other things, failing to make payments when due on March 25, 2026 and thereafter.

21. Ascentium, as a result of Phoenix's default under EFA 126, has elected to accelerate EFA 126 and declare the accelerated balance immediately due and owing. A true and accurate copy of the Notice of Default and Acceleration is attached hereto as **Exhibit G**.

22. As of August 28, 2026, the outstanding balance due under EFA 126, exclusive of accruing interest, late charges, attorneys' fees, and costs, is not less than $120,140.12, and increases daily at the amount of $58.50.

23. Notwithstanding Phoenix's default, Phoenix remains in possession of the 126 Collateral and has failed and refused to surrender it to Ascentium despite demand.

24. The 126 Collateral is not currently subject to any attachment or execution proceeding, and Ascentium is entitled to its immediate possession pursuant to the terms of the relevant agreements.

**B. EFA No. 2759360**

25. On December 22, 2023, Ascentium and Phoenix entered into Equipment Finance Agreement No. 2759360 ("EFA 360") for the financing of two 2024 Mercedes Sprinter Ultimate Toy Vans, VIN Nos. W1X8ND6Y6PT143617 and W1X8ND6Y2PP581155 (collectively, the "360 Collateral"), with a financed amount of $266,744.56 at an interest rate of 9.99% per annum. A true and accurate copy of EFA 360 is attached hereto as **Exhibit H**.

26. The payment schedule under EFA 360 required one first payment of $26,674.46, followed by 48 monthly payments of $6,087.69.

27. Pursuant to Section 3 of EFA 360, Phoenix granted Ascentium a security interest under the UCC in the 360 Collateral and all accessories, additions, replacements, and proceeds thereof, to secure all obligations under EFA 360 on terms materially identical to those governing EFA 126, including with respect to default, acceleration, and remedies.

28. Section 9 of EFA 360 provides that Phoenix would be in default for, among other things, failure to pay any payment or other amount due when owed; and that upon default Ascentium may, at its election, accelerate and require payment of the Accelerated Balance, consisting of all accrued and unpaid amounts then due plus the remaining future payments discounted to present value at 3% per annum, in addition to pursuing any other remedy available under the UCC or applicable law, including repossession of the secured collateral.

29. On December 12, 2023, Rios executed a Personal Guaranty in favor of Ascentium (the "360 Guaranty," and together with the 126 Guaranty, the "Guaranties"), unconditionally guaranteeing all obligations of Phoenix under EFA 360, on terms materially identical to the 126 Guaranty. A true and accurate copy of the 360 Guaranty is attached hereto as **Exhibit I**.

30. The 360 Guaranty provides that, in the event that Phoenix defaults under EFA 360, Ascentium may proceed first against Rios before proceeding against Phoenix, any collateral, or before enforcing any other remedy. Further, the 360 Guaranty provides that Rios waived all presentments, demands for performance, notices of protest, notices of dishonor, and notices of acceptance of the same.

31. A Titling Addendum executed by Phoenix on December 12, 2023 required Phoenix to deliver the Original Certificates of Title for the 360 Collateral to Ascentium within 90 days,

listing Phoenix as owner and Regions Bank as lienholder. A Massachusetts Certificate of Title issued on March 29, 2024 lists Phoenix as owner and Regions Bank as first lienholder for the vehicle bearing VIN W1X8ND6Y6PT143617. A true and accurate copy of the 360 Certificate of Title is attached hereto as **Exhibit J**.

32. Phoenix generally made its payments timely under EFA 360 for the first two years after execution of the EFA. A true and accurate copy of the Life to date – Charge off Ledger (the "360 Ledger") is attached hereto as **Exhibit K**.

33. Phoenix defaulted under EFA 360 on December 5, 2025.

34. Ascentium, as a result of Phoenix's default under EFA 360, has elected to accelerate EFA 360 and declare the accelerated balance immediately due and owing. *See* **Exhibit G**.

35. In May 2026, Ascentium took possession of the 360 Collateral and informed Defendants that it would sell them to reduce the deficiency balance on or after June 6, 2026. A true and accurate copy of the Disposition Notices are attached hereto as **Exhibit L**.

36. In June of 2026, the 360 Collateral was sold at a commercially reasonable price and by commercially reasonable means, and Ascentium received $97,000.00 (total) in connection with the sale of the two vehicles, which was applied to further reduce the outstanding balance under EFA 360.

37. After application of the $97,000.00 sale proceeds against the amounts due under EFA 360, a deficiency balance remains due and owing. As of August 28, 2026, the outstanding deficiency balance under EFA 360, exclusive of the continually accruing interest, late charges, attorneys' fees, and costs, is not less than $42,932.92, and which increases at a per diem rate of $11.77.

## C. Demand and Refusal to Pay

38. Ascentium has demanded that Phoenix and Rios pay all amounts due and owing under the Agreements and the Guaranties, and that Phoenix surrender the 126 Collateral. Despite such demand, Defendants have failed and refused, and continue to fail and refuse, to pay the amounts due and, with respect specifically to Phoenix, to surrender the 126 Collateral. *See* **Exhibit G**.

39. All conditions precedent to the commencement of this action have occurred, have been performed, or have been waived.

40. As of August 28, 2026, Defendants jointly owed $163,073.04, accruing at the amount of $70.27 per day, plus all other contractually-applicable charges, as well as attorneys' fees associated with the costs of collection.

**COUNT I**
**(Breach of Contract on EFA 126 against Phoenix)**

41. Ascentium repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

42. EFA 126 is a valid and enforceable contract between Ascentium and Phoenix, governed by the law of the State of Alabama, requiring Phoenix to make absolute and unconditional payments and to comply with all of its terms and conditions, including maintaining insurance, providing title, and not defaulting on its payment obligations.

43. Ascentium has performed all of its obligations under EFA 126, including providing the financing for the 126 Collateral contemplated by the agreement.

44. Phoenix has materially breached EFA 126 by, among other things, failing to make required payments when due and otherwise defaulting under the agreement.

45. As a direct and proximate result of Phoenix's breach, Ascentium has been damaged in an amount to be proven at trial, but not less than $120,140.12 as of August 28, 2026, plus

additional amounts continuing to accrue in the amount of $58.50 per day, together with pre- and post-judgment interest, late charges, attorneys' fees, and costs as provided under EFA 126.

WHEREFORE, Ascentium prays that the Court enter judgment against Phoenix in the principal amount of not less than $120,140.12, plus additional amounts continuing to come due under EFA 126 such the daily amount of $58.50, pre- and post-judgment interest at the rate authorized by that agreement, attorneys' fees and costs of collection as authorized by that agreement, and such other and further relief as the Court deems just and proper.

## COUNT II
**(Replevin of 126 Collateral against Phoenix)**

46. Ascentium repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

47. Ascentium holds a valid and perfected security interest in the 126 Collateral and, following Phoenix's default and Ascentium's election to accelerate, is entitled to immediate possession of the 126 Collateral pursuant to the terms of EFA 126 and applicable law.

48. The 126 Collateral is personal property with a value in excess of twenty dollars, is currently located within this Commonwealth, and is wrongfully detained by Phoenix.

49. Ascentium has demanded that Phoenix surrender the 126 Collateral, and Phoenix has failed and refused to do so.

50. Phoenix's continued possession of the 126 Collateral is unlawful, and Ascentium is entitled to an order and judgment for the return of the 126 Collateral pursuant to Mass. Gen. Laws ch. 247, together with damages for its unlawful detention.

WHEREFORE, Ascentium prays that the Court enter judgment against Phoenix awarding Ascentium immediate possession of the 126 Collateral, together with a writ of replevin directing the sheriff or other proper officer to take and deliver the 126 Collateral to Ascentium, or, in the

alternative, the value thereof, plus damages for its unlawful detention, costs, and such other and further relief as the Court deems just and proper.

**COUNT III**
**(Breach of Guaranty: EFA 126 against Rios)**

51. Ascentium repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

52. The 126 Guaranty is a valid and enforceable contract between Ascentium and Rios, governed by the law of the State of Alabama, under which Rios unconditionally and absolutely guaranteed the prompt payment and performance of all of Phoenix's obligations under EFA 126 in the event of default.

53. Phoenix's default under EFA 126 triggered Rios's obligations as guarantor. The 126 Guaranty expressly permits Ascentium to proceed against Rios without first proceeding against Phoenix, the collateral, or any other remedy.

54. Despite demand, Rios has failed and refused to pay the amounts due under EFA 126 pursuant to his obligations under the 126 Guaranty, and has thereby breached the 126 Guaranty.

55. As a direct and proximate result of Rios's breach, Ascentium has been damaged in an amount to be proven at trial, but not less than (as of August 28, 2026) $120,140.12, plus additional amounts continuing to accrue including the daily interest and fees of $58.50, together with pre- and post-judgment interest, late charges, attorneys' fees, and costs, including Ascentium's expenses in enforcing the 126 Guaranty.

WHEREFORE, Ascentium prays that the Court enter judgment against Rios, jointly and severally with Phoenix, in the principal amount of not less than $120,140.12 as of August 28, 2026, plus additional amounts continuing to come due under EFA 126 in the amount of $58.50 per day,

pre- and post-judgment interest, attorneys' fees and costs of collection as authorized by the 126 Guaranty, and such other and further relief as the Court deems just and proper.

**COUNT IV**
**(Breach of Contract: EFA 360 Deficiency against Phoenix)**

56. Ascentium repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

57. EFA 360 is a valid and enforceable contract between Ascentium and Phoenix, governed by the law of the State of Alabama, requiring Phoenix to make absolute and unconditional payments and to comply with all of its terms and conditions.

58. Ascentium has performed all of its obligations under EFA 360.

59. Phoenix breached EFA 360 by failing to make payments when due.

60. Following Phoenix's default, Ascentium sold the 360 Collateral at a commercially reasonable price and in a commercially reasonable manner in accordance with governing law and EFA 360.

61. Following the commercially reasonable sale of the 360 Collateral, Ascentium applied the resulting proceeds of $97,000.00 received upon sale, against the amounts due under EFA 360.

62. The sale and payoff amounts did not satisfy the outstanding amounts of EFA 360, resulting in a deficiency amount which must be satisfied by Phoenix, and which non-payment constitutes an ongoing breach.

63. As a direct and proximate result of Phoenix's breach, Ascentium has suffered damages consisting of the deficiency balance in an amount to be proven at trial, but not less than $42,932.92 as of August 28, 2026, plus additional amounts continuing to accrue such as interest

and fees in the per diem rate of $11.77, together with pre- and post-judgment interest, late charges, attorneys' fees, and costs as provided under EFA 360.

WHEREFORE, Ascentium prays that the Court enter judgment against Phoenix in the principal amount of not less than $42,932.92, plus additional amounts continuing to come due under EFA 360 including interest and fees in the amount of $11.77 for every day after August 28, 2026, pre- and post-judgment interest at the rate authorized by that agreement, attorneys' fees and costs of collection as authorized by that agreement, and such other and further relief as the Court deems just and proper.

**COUNT V**
**(Breach of Guaranty: EFA 360 against Rios)**

64. Ascentium repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

65. The 360 Guaranty is a valid and enforceable contract between Ascentium and Rios, governed by the law of the State of Alabama, under which Rios unconditionally and absolutely guaranteed the prompt payment and performance of all of Phoenix's obligations under EFA 360 in the event of a default.

66. Phoenix's default under EFA 360 triggered Rios's obligations as guarantor. The 360 Guaranty expressly permits Ascentium to proceed against Rios without first proceeding against Phoenix, the collateral, or pursuing any other remedy.

67. The amount owed by Rios was reduced by the same amount as applied to Phoenix following the collateral sale, meaning his obligation under the 360 Guaranty is equivalent to the deficiency as owed under the EFA.

68. Despite demand, Rios has failed and refused to pay the deficiency amount due under EFA 360 pursuant to his obligations under the 360 Guaranty, and has thereby breached the 360 Guaranty.

69. As a direct and proximate result of Rios's breach, Ascentium has been damaged in an amount to be proven at trial, but not less than $42,932.92, plus additional amounts continuing to accrue including daily interest and fees of $11.77 for every day after August 28, 2026, together with pre- and post-judgment interest, late charges, attorneys' fees, and costs, including Ascentium's expenses in enforcing the 360 Guaranty.

WHEREFORE, Ascentium prays that the Court enter judgment against Rios, jointly and severally with Phoenix, in the principal amount of not less than $42,932.92, plus additional amounts continuing to come due under EFA 360 including the accruing interest and fees in the daily amount of $11.77 since August 28, 2026, pre- and post-judgment interest, attorneys' fees and costs of collection as authorized by the 360 Guaranty, and such other and further relief as the Court deems just and proper.

**COUNT VI**
**(Conversion against Phoenix and Rios)**

70. Ascentium repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

71. Ascentium has a right to immediate possession of the 126 Collateral under the terms of EFA 126 and applicable law.

72. Defendants have wrongfully exercised dominion and control over the 126 Collateral to the exclusion of Ascentium's rights by failing and refusing to surrender possession following Phoenix's default and Ascentium's demand.

73. As a direct and proximate result of Defendants' conversion of the 126 Collateral, Ascentium has been damaged in an amount to be proven at trial.

WHEREFORE, Ascentium prays that the Court enter judgment against Phoenix and Rios, jointly and severally, for damages for conversion of the 126 Collateral in an amount to be proven at trial, plus costs, interest, fees, attorneys' fees, and such other and further relief as the Court deems just and proper.

**COUNT VII**
**(Account Stated against Phoenix and Rios)**

74. Ascentium repeats and realleges each of the foregoing paragraphs as though fully set forth herein, to the extent not inconsistent with this Count, which is pled in the alternative.

75. Ascentium and Phoenix, through their course of dealing under the Agreements (EFA 126 and EFA 360), established running accounts reflecting amounts owed by Phoenix to Ascentium, including periodic statements and billing records reflecting the balances due under each Agreement.

76. Phoenix received and retained such statements and records without objection within a reasonable time, thereby acquiescing in and agreeing to the correctness of the stated balances.

77. Despite demand, Phoenix has failed and refused to pay the stated balances, and Rios, as guarantor, has failed and refused to pay such balances on Phoenix's behalf.

WHEREFORE, Ascentium prays that the Court enter judgment against Phoenix and Rios on the accounts stated in an amount to be proven at trial, but not less than the amounts alleged in Counts I and IV above, plus interest, fees, costs, attorneys' fees and such other and further relief as the Court deems just and proper.

**COUNT VIII**
**(Unjust Enrichment against Phoenix and Rios)**

78. Ascentium repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

79. Ascentium conferred a benefit on Phoenix by financing Phoenix's acquisition of the 126 Collateral and the 360 Collateral, and Phoenix did enjoy the use and benefit of each, and, with respect to the 126 Collateral, continues to retain possession of, that benefit.

80. Phoenix has appreciation and knowledge of the benefit conferred, and it would be inequitable for Phoenix to retain the benefit of Ascentium's financing and the continued use or possession of the collateral without paying Ascentium the value thereof.

WHEREFORE, Ascentium prays that, in the alternative, the Court award Ascentium restitution against Phoenix and Rios in an amount to be proven at trial, but not less than the amounts alleged in Counts I and IV above including interest and fees that are accruing, plus costs, attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated: October 7, 2026

Respectfully submitted,

HUSCH BLACKWELL LLP

*<u>/s/ Stephanie Sprague</u>*
Stephanie Sprague (BBO# 667714)
One Congress Street, Suite 3102
Boston MA 02114
Tel: 617-598-6765
Stephanie.sprague@huschblackwell.com

*Attorneys for Plaintiff*